

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

APR 1 8 2013

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal No. 13-30079-GPM |
| ) | |
| vs. ) | Title 18, United States Code, |
| ) | Sections 641, 1341 |
| FAITH L. MORAN, ) | |
| ) | |
| Defendant. ) | |

## INDICTMENT

**THE GRAND JURY CHARGES:**

At all times material to this indictment:

### Background

1. The Social Security Act of 1935 initiated the Federal and State Unemployment Insurance System. The system was designed to provide benefits to persons out-of-work due to no fault of their own. The purpose of the Unemployment Insurance (hereinafter "UI") System was to lessen the effects of unemployment through cash payments made directly to laid-off workers, ensuring that at least a significant portion of the necessities of life, most notably food, shelter, and clothing, were met on a week-to-week basis while the worker sought new employment.

2. Funding for the infrastructure of state unemployment insurance comes from federal taxes paid by employers known as the Federal Unemployment Tax Account ("FUTA"). On July 1, 2008, the United States Congress passed an Emergency Unemployment Compensation law that stated that any UI benefits that were received after the worker's state

benefits expired would be fully funded by the federal government. Congress created and funded the Extended Unemployment Compensation Act ("EUCA") to fund the payment of extended benefits. States draw money from the EUCA to fund all extended UI benefits. On February 17, 2009, Congress passed the American Recovery and Reinvestment Act (ARRA) which, among its provisions, provided an additional $25.00 in federal funds per week for UI beneficiaries. Congress created and funded the Federal Additional Unemployment Compensation Account ("FAUCA") to fund the payment of these additional benefits.

3. The UI System is administered for the federal government in the State of Missouri by the Missouri Division of Employment Security (hereinafter "MODES"). The United States government funds all administrative costs for the UI program, including money used for salaries, office expenses, and computer equipment. The UI benefits paid by MODES were funded primarily by contributions from employers and, during times of high unemployment, by the United States Treasury.

4. An eligible worker could receive up to 26 weeks of state-funded benefits per benefit year. After the initial benefit period, a worker could receive extended UI benefits funded by the federal government.

5. Upon becoming involuntarily unemployed, a worker is entitled to make a claim for UI benefits either by contacting MODES by telephone or by submitting an application via the Internet. The claim application form includes, among other things, the applicant's name, social security number, and information pertaining to the applicant's past employment, such as the name of an applicant's last employer, dates of employment for that position, and the reason the applicant became unemployed.

6. If an application is approved, an account is set up for the claimant, and the claimant is mailed a Missouri Access MasterCard debit card. MODES transferred benefit funds to Central Bank, a bank located in Jefferson City, Missouri. Central Bank, in turn, issued the Missouri Access MasterCard debit cards to eligible workers. Workers received the debit card containing a dollar amount equal to the amount of unemployment benefits due them, or they could opt to have the funds deposited directly into the account that had been set up.

7. To continue receiving benefits each week thereafter, a claimant is required to submit a claim either via the Internet or the telephone requesting the additional payment of benefits. A claimant activates both the telephone system and the Internet claim system using their social security number along with a personal identification number (PIN) assigned by MODES. The weekly claim forms require the claimant to certify whether he or she worked or received any earnings during the applicable weekly period. Additionally, claimants must certify that they were able to work, that they were available for work, and that they were actively looking for work during the applicable weekly period.

8. MODES relies upon a claimant's answers in the weekly claim to determine whether to continue paying benefits and to determine the appropriate amount of benefits to pay a claimant. If the claim is approved for the applicable weekly period, then the amount of the claim is credited to the Missouri Access MasterCard debit card or is deposited into the worker's account.

9. When the initial claim is filed, a claimant is given printed materials concerning his or her rights and responsibilities under the Missouri Employment Security Law. Those materials include an explanation of the requirement of reporting all wages earned from any source during the weeks in which benefits are claimed and the necessity for truthfully reporting

all other forms of income, such as tips, commissions, vacation and holiday pay, military reserve drill pay, workers' compensation payments, or employer pension payments. Also included is a statement regarding the penalties for knowingly making false statements or withholding information in order to obtain or increase UI benefits.

10. In addition to the information provided by MODES with the initial claim, the MODES website, http://www.labor.mo.gov/DES/Claims, and the automated phone system both provide specific warnings to a claimant that deliberately filing a false statement or claim or withholding information in order to receive benefits could result in the termination of benefits, in the assessment of penalties, and in the claimant being arrested, fined, or imprisoned.

### Scheme to Defraud and to Embezzle Public Funds

11. **FAITH L. MORAN**, a resident of Centreville, Illinois, applied for UI benefits with MODES on or about March 21, 2010. At the time **MORAN** filed her initial claim with MODES, she was employed by the American Red Cross in St. Louis, Missouri. **MORAN** continued her employment with the American Red Cross through at least on or about August 11, 2012.

12. From on or about March 21, 2010, through on or about August 11, 2012, **MORAN** continued to file claims for UI benefits with MODES, while failing to report earning any income or underreporting the amount of income earned during an applicable weekly period.

13. Between March 2010 and August 2012, **MORAN** knowingly converted to her own use approximately $34,596.00 in UI benefit payments from MODES.

14. **MORAN** received the UI benefit payments on the Central Bank Missouri Access MasterCard debit card ending 6692 that was mailed to her home address in Centreville, Illinois from a company in Indiana hired to generate and mail Missouri Access MasterCard debit cards.

15. On or about March 17, 2011, **MORAN** reported that her Missouri Access MasterCard debit card ending 6692 was lost or stolen, causing a second debit card ending 6235 to be issued to her. The card ending 6235 was mailed to **MORAN'S** home address in Centerville, Illinois from the same company in Indiana referenced above.

16. From on or about March 21, 2010, and continuing through at least August 11, 2012, in St. Clair County, within in the Southern District of Illinois, and elsewhere,

### FAITH L. MORAN,

defendant herein, with the intent to defraud, devised, intended to devise, and knowingly and willfully participated in a scheme to defraud and to obtain money by materially false and fraudulent pretenses, representations, and promises.

### COUNT 1 – Embezzlement of Public Funds
### 18 U.S.C. § 641

17. Paragraphs 1 through 16 are incorporated and re-alleged as part of Count 1.

18. From on or about March 21, 2010, through on or about August 11, 2012, in St. Clair County, Illinois, within the Southern District of Illinois, and elsewhere,

### FAITH L. MORAN,

defendant herein, did knowingly and willfully steal, purloin, and convert to her own use money belonging to the United States of America in excess of $1,000, namely, approximately

$34,596.00 in funds administered by the Missouri Division of Employment Security, which funds defendant was not entitled to receive.

All in violation of Title 18, United States Code, Section 641.

### COUNT 2 – Mail Fraud
### 18 U.S.C. § 1341

19. Paragraphs 1 through 16 are incorporated and re-alleged as part of Count 2.

20. On or about April 2, 2010, in St. Clair County, within the Southern District of Illinois, and elsewhere, for purpose of executing or attempting to execute the above-described scheme and artifice to defraud and deprive, Defendant **FAITH L. MORAN** knowingly caused the use of the United States Mail for the purpose of executing the above-described scheme, to wit: the mailing of a Central Bank Missouri Access MasterCard debit card ending 6692 to an address in Centreville, Illinois.

All in violation of Title 18, United States Code, Section 1341.

### COUNT 3 – Mail Fraud
### 18 U.S.C. § 1341

21. Paragraphs 1 through 14 are incorporated and re-alleged as part of Count 3.

22. On or about March 22, 2011, in St. Clair County, within the Southern District of Illinois, and elsewhere, for purpose of executing or attempting to execute the above-described scheme and artifice to defraud and deprive, Defendant **FAITH L. MORAN** knowingly caused the use of the United States Mail for the purpose of executing the above-described scheme, to

wit: the mailing of a Central Bank Missouri Access MasterCard debit card ending 6235 to an address in Centreville, Illinois.

All in violation of Title 18, United States Code, Section 1341.

**A TRUE BILL**

FOREPERSON

KATHERINE L. LEWIS
Assistant United States Attorney

STEPHEN R. WIGGINTON
United States Attorney

Bond Recommendation: $10,000 (unsecured)